1
2
3
4
5
6
7
8

9            **IN THE UNITED STATES DISTRICT COURT**

10          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

11

12   TERESA VAN LIER,                              CASE NO. CV-F-04-5872 LJO

13              Plaintiff,                         **DECISION ON PLAINTIFF'S SOCIAL**
                                                   **SECURITY COMPLAINT**
14        vs.                                      (Docs. 14, 15, 18.)

15   JO ANNE B. BARNHART,
     Commissioner of Social
16   Security,

17              Defendant.
                                            /
18

19                              **INTRODUCTION**

20          Plaintiff Teresa Van Lier ("plaintiff") seeks this Court's review of an administrative law judge's

21   ("ALJ's") decision that plaintiff is not disabled and is ineligible for Supplemental Security Income

22   ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1381d.  Pursuant to 28

23   U.S.C. § 636(c) and F.R.Civ.P. 73, the parties agreed to proceed before a United States Magistrate

24   Judge, and by a November 9, 2004 order, this action was assigned to United States Magistrate Judge

25   Lawrence J. O'Neill for all proceedings.  Based on review of the Administrative Record ("AR") and the

26   papers of plaintiff and defendant Jo Anne B. Barnhart, Commissioner of Social Security

27   ("Commissioner"), this Court DENIES plaintiff's request to reverse the Commissioner's decision to

28   deny plaintiff SSI or to remand for further proceedings.

                                            1

1

## BACKGROUND

2

### Plaintiff's Personal Background

3

        Plaintiff is age 53, has an 11th grade education, and no relevant work experience.  (AR 28, 80,

4

90, 302.)

5

### Administrative Proceedings

6

### *Plaintiff's Prior SSI Applications*

7

        On September 13, 1991, plaintiff filed her prior SSI application (not at issue here), and the Social

8

Security Administration ("SSA") determined plaintiff was disabled based on addiction to drugs and/or

9

alcohol and awarded plaintiff SSI.  (AR 18.)  In 1996, 42 U.S.C. § 1383c(a)(3)(J) was enacted to

10

preclude disability benefits as of January 1, 1997 when drug and alcohol abuse is a material contributing

11

factor of disability.  On June 26, 1996, SSA notified plaintiff that her SSI would terminate effective

12

December 31, 1996 in that SSA determined that plaintiff was not disabled if drug and/or alcohol abuse

13

were excluded from consideration.  (AR 18.)

14

        Plaintiff filed an ALJ hearing request to address her SSI termination.  (AR 18.)  In a July 7, 1998

15

decision, the ALJ agreed with termination of plaintiff's SSI, and plaintiff neither appealed nor sought

16

to reopen the ALJ's decision.  (AR 18.)

17

        On December 22, 1998, plaintiff protectively filed another SSI application (not at issue here),

18

and SSA denied plaintiff's claim initially and on reconsideration.  (AR 18.)  After plaintiff filed her

19

ALJ hearing request, the ALJ issued his September 7, 2000 decision to find plaintiff is not disabled and

20

has the residual functional capacity to perform the full range of light and sedentary work.  (AR 44.)  On

21

January 28, 2002, SSA's Appeals Council denied plaintiff's request to review the ALJ's decision, and

22

plaintiff did not pursue appeal to bar under res judicata issues regarding disability through September

23

7, 2000, the date of the ALJ's decision.[1]  (AR 18-19.)

24

25

        [1]        In the January 30, 2003 ALJ decision at issue here, the ALJ explained:

26

                For the period following September 7, 2000, the prior decision raises the presumption
                of non-disability unless there is a showing of "changed circumstances" that would

27

                warrant a finding of disability (Social Security Acquiescence Ruling (SSAR) 97-4(9)).
                In order to find that changed circumstances exist, it must be shown that "new and

28

                material evidence" regarding the previously adjudicated issue exists (Id.).  (AR 19.)

*Plaintiff's Current SSI Application*

1

2        On February 2, 2001, plaintiff protectively filed her SSI application at issue here to claim

3  disability since January 1, 2001 based on extreme lower back pain, broken coxic bone, bad foot,

4  emphysema, bursitis, high anxiety, bi-polarity, ulcers and migraines. (AR 80, 84, 89.) On February 20,

5  2001, counsel was appointed for plaintiff. (AR 30.)  With its June 25, 2001 Notice of Disapproved

6  Claims, SSA denied plaintiff's claim and determined plaintiff's condition is not severe enough to

7  prevent her to work. (AR 58.)

8        On July 27, 2001, plaintiff filed her Request for Reconsideration to claim that she is "totally

9  disabled." (AR 62.)  With its November 8, 2001 Notice of Reconsideration, SSA denied plaintiff's

10  claim and again determined plaintiff's condition is not severe enough to prevent her to work. (AR 63.)

11        On November 30, 2001, plaintiff filed her Request for Hearing by Administrative Law Judge to

12  claim she is "totally disabled." (AR 68.) After a September 3, 2002 hearing, the ALJ issued his January

13  30, 2002 decision to conclude that plaintiff is not disabled from December 8, 2000 forward and has the

14  residual functional capacity to perform light exertional work with postural and environmental

15  limitations. (AR 19, 28.)

16        Plaintiff submitted to the Appeals Council her March 11, 2003 Request for Review of Hearing

17  Decision to seek review of the ALJ's decision. (AR 12.)  On April 21, 2004, the Appeals Council

18  denied plaintiff's request to render the ALJ's January 30, 2002 decision as the Commissioner's final

19  determination subject to this Court's review. (AR 6.)

20            **Relevant Medical History And Records Review**

21                    *Stanislaus Medical Center*

22        During 2000, plaintiff treated at Stanislaus Medical Center.  On February 22, 2000, plaintiff

23  complained of cough/cold and back pain and was assessed with chronic obstructive pulmonary disease

24  ("COPD") and ocular albinism. (AR 207.)  On April 18, 2000, plaintiff complained of poor sleep and

25  requested Tylenol #3 for back pain and a referral for mental health counseling. (AR 206.)  Plaintiff was

26  assessed with COPD stable and back pain stable. (AR 206.)  The notes state that plaintiff needs mental

27  health services for depression and prevention of substance abuse relapse. (AR 206.)  On July 18, 2000,

28  plaintiff complained of tiredness and increased migraines. (AR 204.)  Plaintiff was assessed with COPD

stable and allergies stable and was advised of the importance to decrease smoking. (AR 204.)   On August 5, 2000, plaintiff was assessed with COPD stable and depression/anxiety. (AR 205.)   On September 12, 2000, plaintiff was assessed with stable COPD. (AR 202.)   On October 19, 2000, plaintiff was assessed with worsening anxiety and given a one-time Xanax prescription. (AR 200.)   On November 22, 2000, plaintiff complained she was nervous all the time but took no medication. (AR 198.)   Plaintiff was assessed with anxiety, depression and insomnia for which she was prescribed Remeron and Ambien. (AR 198.)   On November 30, 2000, plaintiff complained of migraines and was assessed with headaches, depression, anxiety and insomnia and COPD stable. (AR 197.)

On January 19, 2001, plaintiff reported she had been in a rear end automobile collision on January 12, 2001. (AR 192.)   Plaintiff was assessed with cervical strain/torticollis and thoracic spasm and prescribed Vicodin, Soma and ice. (AR 192.)   On January 29, 2001, plaintiff was assessed with stable back pain, advised to increase exercise and prescribed Wellbutrin. (AR 191.)   On February 28, 2001, plaintiff was assessed with bronchitis. (AR 190.)   In March 2001, plaintiff was assessed with severe right hip pain for which she was treated with Vioxx. (AR 189.)   On April 10, 2001, plaintiff was assessed with COPD. (AR 188.)   A November 18, 2001 tomography scan of plaintiff's abdomen was generally normal. (AR 181.)

### Stanislaus Behavioral Health Center

In 2000, plaintiff treated at Stanislaus Behavioral Health Center.   According to an April 24, 2000 intake assessment, plaintiff complained of severe depression with suicidal thoughts, panic attacks with ability to regain composure, and fear of being in public and outside her home. (AR 125.)   Plaintiff noted that she has no social life and has held no employment "for a significant time frame." (AR 125.)   The social worker preparing the intake assessment noted that plaintiff "appears to be escalating behavior for this writer's benefit [and] in her expression of conveying her need for services." (AR 125.)   The intake assessment notes that plaintiff appeals her Social Security status, has a history of drug use (methamphetamine, rock cocaine, etc.), and denies drug use in the last two years. (AR 126.)   The intake assessment further notes that plaintiff "makes suicidal threats [and] appears hopeless to change her situation.   She believes that she is unable to function in public [and] needs to be on SSI." (AR 127.)

Manuel O. Chua, Jr., M.D. ("Dr. Chua"), conducted a June 5, 2000 psychiatric/medication

evaluation and noted that plaintiff complained of severe anxiety and depression with occasional suicidal thoughts and depression worsening during the past few months. (AR 122.) Dr. Chua noted that plaintiff "feels very hopeless as far as changing her lifestyle. She believes that she is unable to function in public and cannot work and therefore needs to be on SSI." (AR 122.) Plaintiff informed Dr. Chua of her "long history of substance abuse including alcohol, methamphetamine, rock cocaine, and even heroin" and that she has not used drugs or alcohol during the past two years. (AR 122.) Dr. Chua noted plaintiff's SSI application and refusal of counseling because "she cannot be around people." (AR 122, 123.) As to plaintiff's mental status examination, Dr. Chua commented that plaintiff "appears to be somewhat dramatic and histrionic" and "appeared to be escalating her behavior during the interview in her need to express or convey to me that she urgently needs services." (AR 123.) Dr. Chua found plaintiff's "attention, concentration, and memory are impaired. Her insight and judgment [are] poor. Her level of intellectual functioning is average." (AR 123.)

Dr. Chua diagnosed post-traumatic stress disorder, depressive disorder not otherwise specified, polysubstance dependence in remission, and histrionic personality disorder. (AR 124, 270.) Dr. Chua treated plaintiff with Zoloft 25 mg to be increased to 50 mg. (AR 124, 270.) Dr. Chua recommended counseling. (AR 124, 270.)

Plaintiff did not make her July 11, 2000 appointment. (AR 270.) On October 2, 2000, plaintiff stated she did not want to participate in anxiety group sessions and preferred individual counseling. (AR 268.) November 14, 2000 notes reflect that Xanax was effective and that plaintiff was assessed with depression recurrent. (AR 266.) Plaintiff failed to attend November 9, 16, 23 and 30, 2000 and December 7, 2000 anxiety group sessions. (AR 265.)

### *Ralph H. Wood, M.D., Consultative Internist*

Ralph H. Wood, M.D. ("Dr. Wood"), an internist, conducted a consultative examination of plaintiff and prepared a May 21, 2001 report. (AR 128.) Plaintiff chiefly complained of depression, low back pain and left foot pain. (AR 128.) Dr. Wood noted plaintiff "is not taking any medications for her back or foot pain at this time" and was doing in-home health care but stopped in 1996 "because her nerves were shot." (AR 128.) Dr. Woods' examination revealed "[f]ull range of motion of all four extremities" and gait "[w]ithin normal limits," "[m]otor 5/5 throughout. Sensation intact and equal

5

1    bilaterally." (AR 129.) Dr. Woods diagnosed chronic mental illness, chronic low back pain probably

2    secondary to mild osteoarthritis, left foot pain probably secondary to osteoarthritis from multiple old

3    fractures, and chronic migraine headaches. (AR 129.) As to plaintiff's function capacity, Dr. Woods

4    found plaintiff is able to: (1) ambulate without an assistance device; (2) stand 30-45 minutes without a

5    break; (3) sit without restriction; (4) walk two blocks; and (5) lift, push or pull up to 15-20 pounds. (AR

6    129.) Dr. Woods found neither limitations in hand movements nor restriction in fine finger movements.

7    (AR 129.)

8                      ***Gregory Fields, Ph.D., Consultative Psychologist***

9            Gregory Fields, Ph. D. ("Dr. Fields"), a psychologist, conducted a consultative examination of

10   plaintiff and prepared a June 6, 2001 report. (AR 130.) Plaintiff's chief complaint was "nerves," and

11   she reported she is "frequently both depressed and anxious." (AR 130.) Plaintiff reported that she

12   "recently tried group therapy but found this experience to uncomfortable." (AR 131.) Plaintiff further

13   reported that as to her substance abuse, she used "anything and everything," and began with alcohol and

14   graduated to heavier drugs, including "crank and crack." (AR 131.) According to plaintiff, she had been

15   incarcerated 15-20 times for charges of drug possession, unpaid tickets and drunk in public. (AR 131.)

16   Dr. Fields found plaintiff's insight and judgment fair and no evidence of formal thought disorder. (AR

17   132.) Dr. Fields diagnosed post-traumatic stress disorder, depressive disorder not otherwise specified

18   (mixed anxiety and depressive disorder), and polysubstance dependence, in full remission by report.

19   (AR 133.) Dr. Fields concluded:

20         The claimant's ability to deal with the public, supervisors and co-workers appears to be
           moderately impaired based upon history and behavioral observations.
21
           The claimant's ability to maintain attention and concentration for simple one and two
22         step tasks appears to be unimpaired. Her ability to perform multiple step and high level
           cognitive tasks appears to be grossly unimpaired from a cognitive point of view based
23         on brief mental status testing.

24         The claimant's ability to withstand the stress and pressure associated with the interview
           and mental status testing was moderately limited based on today's performance. (AR
25         133.)

26   Dr. Fields noted his "guarded" prognosis. (AR 133.)

27              ***Psychiatric Review Technique And Mental Residual Functional Capacity Assessment***

28           Mario Morando, M.D. ("Dr. Morando"), completed a June 21, 2001 Psychiatric Review

                                                    6

1  Technique to note his findings of plaintiff's affective and anxiety-related disorders. (AR 136, 139, 141.)
2  Dr. Morando found plaintiff has mild to moderate restriction of daily living activities and difficulties
3  in maintaining social functioning, concentration, persistence or pace.  (AR 148.)

4        Dr. Morando completed a June 21, 2001 Mental Residual Functional Capacity Assessment to
5  generally conclude plaintiff is not significantly limited in understanding and memory, sustained
6  concentration and persistence, social interaction and adaptation. (AR 150-151.) Dr. Morando concluded
7  that plaintiff should be able to do at least simple, repetitive tasks.  (AR 152.)

8                    ***Physical Residual Functional Capacity Assessment***

9        David Pong, M.D. ("Dr. Pong"), completed an October 8, 2001 Physical Residual Functional
10  Capacity Assessment to note that plaintiff is able to: (1) lift/carry 10 pounds frequently and 20 pounds
11  occasionally; (2) stand/walk about six hours in an eight-hour workday; (3) sit about six hours in an eight-
12  hour workday; and (4) push/pull subject to the lift/carry limitations.  (AR 154.)  Dr. Pong found neither
13  postural, manipulative, communicative nor environmental limitations.  (AR 158.)  Dr. Pong noted:
14  "Partially credible severity of impairment is not supported by objective evidence." (AR 158.) Dr. Pong
15  found "no significant evidence to restrict walking." (AR 159.) Dr. Pong further observed that plaintiff
16  "is very seldom seen by [treating physician] for migraines" and "was treated with Imitrex with no
17  subsequent complaint of migraines."  (AR 160.)

18                           ***Hughson Medical Office***

19        Plaintiff treated with Hughson Medical Office, and on November 21, 2001 was assessed with
20  COPD/smoker and back pain stable.  (AR 294.)  On December 10, 2001, plaintiff was assessed with
21  COPD.  (AR 293.)  On January 27, 2002, plaintiff was assessed with COPD stable.  (AR 292.)  On
22  January 23, 2002, plaintiff complained that her back and kidney hurt.  (AR 291.)  She was assessed with
23  COPD and encouraged to stop smoking.  (AR 291.)  On February 1, 2002, plaintiff again was
24  encouraged to stop smoking.  (AR 290.)  On March 7, 2002, plaintiff complained of back spasms and
25  was assessed with back pain stable and COPD stable.  (AR 289.)

26                       ***Modesto Memorial Medical Center***

27        On June 27, 2002, plaintiff presented at the Modesto Memorial Medical Center after she
28  experienced a seizure. (AR 286, 287.)  She appeared anxious and upset, and notes reflect plaintiff had

                                           7

1   used crank the day before.  (AR 281.)  Plaintiff was assessed with a single isolated seizure.  (AR 283.)

2   Plaintiff presented to the emergency room again on July 5, 2002, and notes reflect a history of

3   amphetamine use.  (AR 275, 276.)  Plaintiff was assessed with a single isolated seizure.  (AR 275.)

### G. Pickell, M.D., Treating Physician

5   Plaintiff treated with G. Pickell, M.D. ("Dr. Pickell"), who completed a June 28, 2002 Complete

6   Medical Report (Physical) to note his findings of COPD, chronic anxiety and poor response to treatment.

7   (AR 257.)  Dr. Pickell concluded plaintiff is able to: (1) lift/carry up to 10 pounds continuously and up

8   to 20 pounds frequently; (2) sit six hours in an eight-hour workday and for two hours without

9   interruption; (3) stand and walk two hours in an eight-hour workday and stand and walk one time

10  without interruption; (4) use her hands and feet without limitation; (5) occasionally climb, stoop, crouch,

11  kneel, crawl and push/pull; and (6) frequently balance and reach.  (AR 258-260.)  Dr. Pickell noted that

12  plaintiff should avoid concentrated exposure to heights, moving machinery, chemicals, dust, extreme

13  temperatures, fumes and vibrations.  (AR 261.)

### Medications

15  Plaintiff's medications have included Acetaminophen/Codeine #3, Isosorbide 5 mg, Ibuprofen,

16  Remeron 30 mg, Isordil 5 mg, Neurontin 400 mg, Tasamet 400 mg, Benconase AQ 84 mg, Flurazem

17  30 mg, Actagen, Prevacid 30 mg, Estradiol 2 mg, Imitrex 50 mg., Actonel 5 mg, Buspal 10 mg, and

18  Amitripyline 50 mg.  (AR 89, 91.)

### Plaintiff's Activities And Testimony

### Plaintiff's Reports And Questionnaires

21  Plaintiff completed an February 28, 2001 Disability Report Adult to claim her ability to work

22  is limited by "extreme pain, limited mobility, [inability] to be around people . . . high anxiety [and] panic

23  attacks."  (AR 84.)  Plaintiff noted that she cannot function in group therapy.  (AR 86.)

24  Plaintiff completed an April 6, 2001 Work History Report to claim: "I do not remember how long

25  it has been, but I would guess 12-15 years since I worked, so I don't remember anything about my past

26  work history."  (AR 98.)

27  Plaintiff completed an April 6, 2001 Daily Activities Questionnaire to note that on an average

28  day, she watches television, listens to music and reads.  (AR 105.)  Plaintiff takes medication to assist

with sleep. (AR 105.) Plaintiff has no difficulty to care for her personal needs. (AR 105.) Plaintiff's aunt prepares plaintiff's foods. (AR 106.) Plaintiff neither cooks nor shops. (AR 106.) Plaintiff loads the dishwasher and sometimes does laundry and takes out trash. (AR 106.) Plaintiff leaves her home only for doctors' appointments. (AR 107.) Plaintiff sometimes drives but becomes nervous when driving alone. (AR 107.) Plaintiff can walk but not far because of two foot surgeries. (AR 107.) Plaintiff participates in no social groups. (AR 108.) Plaintiff loses her train of thought and does not "feel like doing anything." (AR 109.) Plaintiff noted that her condition prevents her to work because "I never leave the house and I don't like being around people." (AR 109.) Plaintiff "can't be around people," "get[s] too nervous," and has "panic attacks." (AR 109.) As for past employment, plaintiff noted: "It has been so many years since I worked, I don't remember if I lost my job or exactly what happened." (AR 109.)

Plaintiff's brother Mark Allen Hasley ("Mr. Hasley") completed an April 6, 2001 Daily Activities Questionnaire (Third Party Information) to note that plaintiff spends a typical day in bed watching television, reading or listening to music." (AR 99.) Plaintiff has no difficulty caring for her personal needs but does not do so on a "regular basis." (AR 100.) Plaintiff does not cook, and her aunt and uncle prepares her meals. (AR 100.) Plaintiff does not shop. (AR 100.) Plaintiff occasionally performs light housework. (AR 101.) Plaintiff leaves her home only for doctors' appointments. (AR 101.) Plaintiff has a driver's license but neither drives nor uses public transportation. (AR 101.) Plaintiff does not engage in recreational activities or hobbies. (AR 101.) Plaintiff stays alone and away from others. (AR 102.) Plaintiff participates in no social groups and fears being in public. (AR 102, 103.) Plaintiff "has to write anything important down to make sure she does not forget." (AR 103.) Plaintiff loses her train of thought when performing chores. (AR 103.) Plaintiff is very depressed and alone. (AR 104.)

Plaintiff completed a July 8, 2001 Reconsideration Disability report to note that her medication had increased and that she continually alienates herself and becomes more anti-social. (AR 111.) Plaintiff neither shops, socializes nor interacts with others. (AR 113.) Plaintiff feels "things are too much for me to handle. Trying to force me to get out in the world [and] be a responsible person makes things worse. I can't do it – I will die first – I just can't handle it." (AR 113.)

/ / /

9

***Plaintiff's ALJ Hearing Testimony***

Plaintiff testified at the September 3, 2002 hearing that she left school during the middle of her senior year but never received her high school diploma or GED. (AR 302.) Plaintiff is able to read and write. (AR 302.) Plaintiff has not worked during the past 15 years. (AR 303.) In the early 1990s, plaintiff provided in-home support services for her father and which included shopping, laundry, housework, meals, and helping with medication and doctors. (AR 305.)

Plaintiff claimed that she is unable to work chiefly because of fear of people, depression and anxiety. (AR 305.) Plaintiff does not treat with mental health care providers. (AR 305.) Dr. Pickell, plaintiff's family physician, treats plaintiff's depression and anxiety with medication which she claimed do "not really" help. (AR 306, 307.) Plaintiff had received weekly counseling and therapy at Stanislaus Behavioral Health Center but stopped going because she found it "hard to talk to people, couldn't hardly talk to them." (AR 307.) Plaintiff had difficulty to explain why she was there and what was wrong. (AR 308.) Plaintiff attended two group sessions but did not speak during them. (AR 308.) Plaintiff described her depression symptoms to include nervousness, loss of appetite and seclusion. (AR 309.)

On an average night, plaintiff sleeps 10-12 hours and requires an hour to fall asleep. (AR 306.) Nonetheless, plaintiff claimed to experience difficulty sleeping with interruptions. (AR 306, 324.) Initially, plaintiff claimed medication does not help with sleep but later claimed she sleeps up to 12 hours because of medication. (AR 306, 325.) Plaintiff typically goes to bed at 10 p.m. to 11 p.m. and rises between 10 a.m. and 12 p.m. (AR 324.) In the past, plaintiff slept less. (AR 324.)

Plaintiff had seizures on June 27, 2002 and July 5, 2002. (AR 309.) Dr. Pickell treats plaintiff for her seizures but has not prescribed her seizure medication because she received medication at the emergency room. (AR 309.)

Plaintiff experiences pain to her back, feet and hands. (AR 311.) Plaintiff experiences back pain from standing or sitting "a long time" and from bending over and is able to sit for an hour. (AR 311, 315.) Plaintiff experiences burning and aching to her feet. (AR 311, 315.) Plaintiff has had three surgeries to one foot and one to her other foot to "fix the bones." (AR 311.) Plaintiff has difficulty walking from foot pain. (AR 314.) Plaintiff walks around her home and outside with her dog but requires her fiancee's assistance. (AR 314.) Plaintiff lies down four to six times during the day due to

1    her pain and depression. (AR 315, 321.) Plaintiff feels burning and tingling in her hands. (AR 312.)

2         Plaintiff lost 20 pounds in two months after having grand mal seizures. (AR 303.) Plaintiff

3    attributes her overall medical condition as worsening during the past two or three years. (AR 323.)

4    Plaintiff experiences no adverse side effects from her medication. (AR 323.)

5         Plaintiff is able to do light laundry and cooking. (AR 312.) Plaintiff is unable to sweep because

6    of her back. (AR 315.) Plaintiff has problems to dust if she needs to bend. (AR 322.) Plaintiff is able

7    to drive, and Dr. Pickell has not told her to stop driving. (AR 313.) Plaintiff had difficulty using her

8    feet to drive. (AR 315.) Plaintiff claims to have trouble dressing but is able to put on pierced earrings.

9    (AR 316.)

10        Plaintiff has emphysema which causes shortness of breath and tiring easily. (AR 322.)

11   Plaintiff's breathing becomes more difficult when she becomes upset which happens "a lot . . . just about

12   all the time." (AR 322.) Plaintiff has problems with dust, fumes, gases, smoke and allergies. (AR 323.)

13        "Once in awhile" plaintiff uses drugs and alcohol. (AR 316.) Plaintiff uses methamphetamine

14   at times intravenously, and during the last eight or 10 months prior to the hearing, used it once or twice

15   a month, including with a friend as recently as a few days prior to the hearing. (AR 316, 319, 320.)

16   Plaintiff does not buy methamphetamine and gets it from friends. (AR 320.)   Plaintiff used

17   methamphetamine frequently up to 1995. (AR 320.)   Plaintiff has given no thought to whether

18   methamphetamine use affects her mental condition but believes it has not. (AR 326.) Initially plaintiff

19   noted that she smokes cocaine but later stated she used cocaine once or twice in the last 10 years. (AR

20   317, 321.) Cocaine makes plaintiff paranoid. (AR 326.) Plaintiff continues to drink alcohol once a

21   week but not to the point of becoming drunk although she frequently became drunk in the mid-1980s.

22   (AR 317, 318, 319.) Plaintiff is in no drug or alcohol recovery program. (AR 318.)

23        Plaintiff has served time in jail, most recently seven years prior to the hearing for a traffic

24   warrant. (AR 317.) Plaintiff has spent up to three weeks in jail on warrants for driving violations. (AR

25   317.)

26                          ***Testimony Of Vocational Expert William Wetzel***

27        At the September 3, 2002 ALJ hearing, the ALJ asked vocational expert William Wetzel ("Mr.

28   Wetzel") to assume a hypothetical person who: (1) is age 50; (2) educated to the 12th grade but did not

complete the 12th grade; (3) is literate; (4) has no past relevant work; (5) is able to lift 20 pounds occasionally and 10 pounds frequently; (6) is able to stand and walk for six or more hours in a day; (7) is able to sit without limit; (8) is able to occasionally bend, stoop, twist, squat, kneel and crawl; (9) should not be required to climb or work at heights; (10) should not work near hazardous, moving machinery; (11) should not be exposed to excessive amounts of dust, fumes, smoke or other respiratory irritants; (12) is limited to simple one and two step processes; and (13) should have relatively restricted contact with coworkers and the general public. (AR 327.) With those limitations, Mr. Wetzel identified small parts assembly work (97,000 jobs), hotel/motel housekeeping office cleaner (27,000 jobs), and fast food worker (24,000 jobs). (AR 328.)

Plaintiff's attorney asked Mr. Wetzel to assume as a hypothetical a person who: (1) is able to lift 20 pounds occasionally and 10 pounds frequently; (2) is able to stand and/or walk two to four hours; (3) needs to avoid concentrated exposure to dust, fumes gases, smoke, heights, moving machinery, dangerous work environment and heights; (4) is able to perform one- or two-step job tasking; and(5) should have relatively restricted contact with coworkers and the general public. (AR 329.) With those limitations, Mr. Wetzel identified small parts assembly (40,000 jobs). Plaintiff's attorney asked Mr. Wetzel further to assume requirement of a cooperative work effort, and Mr. Wetzel noted the small parts assembly (40,000) would be eroded by 50 percent. (AR 330.) Mr. Wetzel further noted he would question plaintiff's success to maintain employment based on the degree of problems to which plaintiff testified she had in dealing with people. (AR 331.) When asked by plaintiff's attorney to assume a person experienced stress after 30 minutes of small parts assembly, Mr. Wetzel responded there would be a high probability of difficulty to handle competitively the work. (AR 332.)

## The ALJ's Findings

With his January 30, 2003 decision, the ALJ identified the specific issue as whether plaintiff is under a disability, which is defined as the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. (AR 17.) In determining plaintiff is not disabled and is ineligible for SSI, the ALJ found:

      1.    Plaintiff has an impairment or combination of impairments considered "severe" under

1   20 C.F.R. § 416.920(b).

2   2.   Plaintiff's medically determinable impairments of COPD, status-post osteotomy of left

3        foot fifth metatarsal, anxiety disorder and depression do not meet or medically equal an

4        impairment in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

5   3.   Plaintiff's allegations regarding her limitations are not totally credible.

6   4.   Plaintiff has the physical residual functional capacity to perform light exertional work

7        with postural and environmental limitations in that plaintiff is able to: (1) lift/carry up

8        to 20 pounds occasionally and 10 pounds frequently; (2) stand and walk for six hours in

9        an eight-hour workday; (3) sit for six hours in an eight-hour work day; (4) occasionally

10       crawl, stoop, bend, twist, squat and kneel to preclude climbing or working at heights; and

11       (5) perform at least simple, repetitive tasks.  Plaintiff must avoid concentrated exposure

12       to dust, fumes and chemicals and is precluded to work in environments with exposure

13       to moving machinery.  Plaintiff has a "moderate" degree of limitation to relate to co-

14       workers and the general public.  Plaintiff has a "mild to moderate" degree of limitation

15       in daily living activities and a "moderate" limitation in her maintaining social functioning

16       and concentration, persistence or pace.

17  5.   Plaintiff has no past relevant work.

18  6.   As of September 28, 2000, plaintiff was considered a "younger individual, between the

19       age of 45-49." As of June 25, 2002, plaintiff was considered to be "an individual closely

20       approaching advanced age." 20 C.F.R. § 416.963.

21  7.   Plaintiff has an 11th grade education.

22  8.   Plaintiff's exertional limitations prevent her to perform a full range of light work.

23       Nonetheless, considering Rules 202.10 and 202.17 of the Medical-Vocational

24       Guidelines, 20 C.F.R., Part 404, Subpart P, Appendix 2 and Mr. Wetzel's testimony,

25       there are significant jobs in California which plaintiff could perform, including unskilled

26       light assembly worker, small parts (97,000 jobs in California), hotel cleaner (27,000 jobs

27       in California), and fast foods worker (24,000 jobs in California).  (AR 27-28.)

28  / / /

**DISCUSSION**

**Standard of Review**

Congress has provided limited judicial review of a Commissioner's decision made through an ALJ. *See* 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings).[2]  Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420 (1971), but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. 1420; *Sandgathe*, 108 F.3d at 980.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Sandgathe*, 108 F.3d at 980; *Jones,* 760 F.2d at 995.  If there is substantial evidence to support the administrative finding, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).

This Court reviews the ALJ's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).  Plaintiff bears the burden to prove that she is disabled which requires presentation of "complete and detailed objective medical reports of her condition from licensed medical professionals." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999)

---

[2]   "The district court properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997).

1  (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).  "A decision of the ALJ will not be reversed for

2  errors that are harmless."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

3      Here, plaintiff claims disability since January 1, 2001 based on extreme lower back pain, broken

4  coxic bone, bad foot, emphysema, bursitis, high anxiety, bi-polarity, ulcers and migraines.  (AR 80, 84,

5  89.)  As discussed below, this Court finds that the ALJ properly evaluated the evidence and that his

6  conclusion that the plaintiff is not disabled is based on proper legal standards and substantial evidence.

7                    ### *Chavez* Application And Residual Functional Capacity Evaluation

8      Plaintiff argues the residual functional capacity assessment of the September 7, 2000 ALJ

9  decision "should not have been increased by the ALJ without a full analysis of the evidence."  Plaintiff

10  contends that under *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), the residual functional capacity of

11  the September 7, 2000 decision "should apply, unless changed circumstances show it has gotten better

12  or worse."  The Commissioner argues that the ALJ properly found that the continuing presumption of

13  disability did not apply and assessed plaintiff's residual functional capacity independent of the

14  September 7, 2000 ALJ decision.

15      The September 7, 2000 ALJ decision found that plaintiff had the residual functional capacity for

16  sedentary to light work.  (AR 44.)  The Appeals Council denied plaintiff's request to review the

17  September 7, 2000 decision, and plaintiff did not pursue further action to render subject to res judicata

18  issues of disability through September 7, 2000.  "The principles of res judicata apply to administrative

19  decisions."  *Chavez*, 844 F.2d at 693.  For a claimant "to overcome the presumption of continuing

20  nondisability arising from the first administrative law judge's findings of nondisability, [the claimant]

21  must prove 'changed circumstances' indicating a greater disability."  *Chavez*, 844 F.2d at 693 (citing

22  *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985)).

23      The ALJ explained why he did not apply the presumption of non-disability:

24      . . . In order to find that changed circumstances exist, it must be shown that "new and
       material evidence" regarding the previously adjudicated issue exists. . . .

25

26      . . . [T]he Administrative Law Judge essentially found [in the September 7, 2000
       decision] that the claimant retains the capacity for performing between a sedentary and
       a light exertional level of work with no significant mental impairments and he found that
       she would be able to perform a significant number of jobs existing in the national

27      economy based on the frameworks of Medical-Vocational Rules 201.18 (the relevant rule
       at the sedentary exertional level) and Rule 202.17 (the relevant rule at the light exertional

28

                                                    15

1    level) . . .

2    Based on a review of the evidence submitted with the claimant's current application and
     discussed herein, I find that while there is evidence that a different physical residual
3    functional capacity is warranted, and while there is evidence that the claimant now has
     mental impairments which affect her ability to work, there is still no . . . new and
4    material evidence of "changed circumstances" that are severe enough to warrant a finding
     of disability for the period from December 8, 2000 to present. Thus, I do not apply the
5    presumption of continuing nondisability, but have evaluated the evidence in accordance
     with the procedures set forth for disability determination. Even so, I conclude that the
6    claimant is not disabled within the meaning of the Social Security Act for the entire
     period from December 8, 2000 to present.  (AR 19.)

7

8        Plaintiff fails to demonstrate the ALJ erred in making an independent determination of plaintiff's

9    residual functional capacity assessment in view of plaintiff's alleged changed impairments.  The ALJ

10   correctly observed *Chavez*, where the Ninth Circuit Court of Appeals concluded that "attainment of

11   'advanced age' constitutes a changed circumstance precluding the application of res judicata to the first

12   administrative law judge's ultimate finding against disability."  *Chavez*, 844 F.3d at 693.  The ALJ

13   properly applied the law to the evidence, contrary to plaintiff's assertion.

14                                    **Hypothetical To Mr. Wetzel**

15       Plaintiff argues the ALJ's hypothetical to Mr. Wetzel is "legally insufficient" and vague, omits

16   findings without proper explanation, and is inconsistent with plaintiff's residual functional capacity.  The

17   Commissioner responds that the ALJ properly relied on Mr. Wetzel to determine that plaintiff is able

18   to adjust to jobs existing in significant numbers.

19       In the final step of the five-step disability evaluation, the Commissioner has the burden to show,

20   in light of a claimant's residual functional capacity, he/she can engage in other substantial gainful work

21   that exists in the national economy.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).  The

22   Commissioner "can meet this burden by propounding to a vocational expert a hypothetical that reflects

23   all the claimant's limitations."  *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *cert. denied*, 517

24   U.S. 1122, 116 S.Ct. 1356 (1996)..

25       An ALJ may properly "limit a hypothetical to those impairments that are supported by substantial

26   evidence in the record."  *Osenbrock*, 240 F.3d at 1165.  An ALJ may so limit a hypothetical even when

27   medical evidence conflicts.  *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989)  "An ALJ is free

28   to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence."

1    *Osenbrock*, 240 F.3d at 1165; *see Magallanes*, 881 F.2d at 756-757.   The parameters of an ALJ's

2    hypotheticals need not "include any alleged impairments that the ALJ has rejected as untrue." *Long v.*

3    *Chater*, 108 F.3d 185, 188 (8th Cir. 1997).  An ALJ is not bound to accept restrictions in a hypothetical

4    question of claimant's counsel.  *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986).

5        Plaintiff points to no specific, concrete error with the ALJ's hypothetical, which covered the

6    limitations found by the ALJ.  Plaintiff fails to demonstrate the ALJ erred in relying on Mr. Wetzel's

7    response to the ALJ's hypothetical. The evidence supports the scope of the ALJ's hypothetical.  The ALJ

8    was free to exclude from his detailed hypothetical limitations not supported by substantial evidence.

9    Moreover, plaintiff's counsel was given ample opportunity to provide hypotheticals to Mr. Wetzel. (AR

10   329-332.)

11                              **Credibility Evaluation**

12       Plaintiff criticizes the ALJ's evaluation of plaintiff's credibility.  The Commissioner contends

13   that the ALJ "provided appropriate reasons fro not fully accepting Plaintiff's subjective allegations of

14   pain and limitation."

15       "Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th

16   Cir. 1989); *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988).  "An ALJ cannot be required to believe

17   every allegation of disabling pain." *Fair*, 885 F.2d at 603. An ALJ "may disregard unsupported, self-

18   serving statements." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir.

19   1995).  "If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is

20   unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit

21   the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v.*

22   *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).  If an ALJ's credibility finding is supported by substantial

23   evidence in the record, a reviewing court may not engage in second-guessing. *Thomas*, 278 F.3d at 959.

24   A reviewing court will not reverse an ALJ's credibility determinations "based on contradictory or

25   ambiguous evidence." *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (citing *Allen v. Heckler*,

26   749 F.2d 577, 579 (9th Cir. 1984)).  "So long as the adjudicator makes specific findings that are

27   supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies

28   in the testimony or on relevant character evidence." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir.

                                    17

1991).

In *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), the Ninth Circuit commented:

> In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (quoting *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995)); 20 C.F.R. § 404.1529(c). An ALJ's finding that a claimant generally lacked credibility is permissible basis to reject excess pain testimony.

*See also* S.S.R. 96-7p.[3]

An ALJ may consider the following factors to determine the credibility of a claimant's allegations of disabling pain:

1.   The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

2.   Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

3.   Type, dosage, effectiveness, and adverse side-effects of any pain medication;

4.   Treatment, other than medication, for relief of pain;

5.   Functional restrictions;

6.   Claimant's daily activities;

7.   Unexplained, or inadequately explained, failure to seek treatment or to follow up a prescribed course of treatment; and

8.   Ordinary techniques to test a claimant's credibility.

*Bunnell*, 947 F.2d at 346; *see* 20 C.F.R. §§ 404.1529, 416.929.

After reviewing in detail the medical evidence and applicable standards, the ALJ thoroughly addressed plaintiff's credibility and inconsistencies:

---

[3]      Social Security Ruling 96-7p sets out factors to assess a claimant's credibility: (1)  claimant's daily activities; (2) location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Apart from the objective evidence, there are substantial subjective reasons pursuant to the guidelines of SSR 96-7p to conclude that the claimant's symptoms do not preclude the performance of substantial gainful activity within the claimant's physical and mental residual functional capacity, listed above. While the claimant is clearly physically and mentally impaired, I also note[] that the claimant reported in various forms that she completed or that others completed for her (Ex. D-4E, pp. 1-6; Ex. D-5E, pp. 1-6; Ex. D-6E, pp. 1-4), and in her hearing testimony that she continues to be capable of performing many of her own activities of daily living, including bathing herself; cooking; washing the dishes or loading the dishwasher; making her bed; doing her laundry; performing occasional light housework; taking out the trash; driving and/or sitting in a car while others drive her; visiting with family members once ever 2-3 weeks; taking care of her own personal hygiene; and reading. It should be noted that the physical and mental capabilities requisite for performing many of these household tasks and social interactions replicate those necessary for obtaining and maintaining employment. Additionally, I note that the claimant has a very inconsistent work history and in fact reported at the hearing and throughout the record that she does not have any experience within the past 15 years that can be considered past relevant work, both of which reflect poorly on her past and present motivation to work. I find all of these factors detract from the claimant's credibility to such an extent that very little credibility remains. (AR 25-26.)

Plaintiff fails to substantiate error in the ALJ's evaluation of plaintiff's credibility. The ALJ addressed the objective medical evidence, plaintiff's activities and inconsistent work history. The detailed medical evidence contradicts plaintiff's claims of severe limitations. Medical evidence is "a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) (the medical evidence suffices as "specific, clear, and convincing reasons" to discredit pain claims); *Roberts*, 66 F.3d at 183 (claimant has the burden to prove she has a qualified impairment that meets the 12-month duration requirement). The ALJ noted plaintiff's conservative medication treatment and absence of treatment to establish plaintiff's severe claims. (AR 22-24.) *See Johnson*, 60 F.3d at 1434 ("conservative treatment" suggests "a lower level of both pain and functional limitation."); *Sample v. Schweiker*, 694 F.2d 639, 643 (9th Cir. 1982) (existence of an emotional disorder "is not per se disabling," especially if "amendable to control.") Dr. Pickell, a treating physician, and Dr. Prong noted plaintiff could perform nearly all light work. (AR 154, 158, 258-260.) *See Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (physician's belief that claimant could perform sedentary work is a specific reason to reject claimant's excessive pain claim).

Moreover, the ALJ thoroughly and properly addressed plaintiff's daily activities to question her credibility. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (daily activities are a factor to

1   "consider when making such credibility determinations"). The ALJ properly factored in plaintiff's

2   barren work history to suggest lack of motivation to work. *See Thomas v. Barnhart*, 278 F.3d 947, 959

3   (9th Cir. 2002) ("extremely poor work history" and "little propensity to work" discredited claimant

4   regarding her inability to work).

5          The record reveals further grounds to question plaintiff's credibility. Dr. Chua noted that

6   plaintiff "appears to be somewhat dramatic and histrionic" and "appeared to be escalating her behavior

7   during the interview in her need to express or convey to me that she urgently needs services." (AR 123.)

8   Dr. Chua further noted plaintiff's claim that she "needs to be on SSI." (AR 122.) Treatment notes

9   reflect that plaintiff mentioned her Social Security status. (AR 126.) Plaintiff did not follow through

10  on counseling and group therapy. (AR 268, 307.) Dr. Prong noted that objective evidence discredited

11  plaintiff's claims. (AR 158.) Plaintiff acknowledged no side effects from her medication. (AR 323.)

12         In sum, the ALJ make specific findings to substantiate his doubt of plaintiff's alleged limitations,

13  and substantial evidence supports such findings. This Court is not in a position to second guess the

14  ALJ's credibility conclusions.

15                          **Evaluation Of Physician Opinions**

16         In a scattered, haphazard approach, plaintiff questions the ALJ's evaluation of physician

17  opinions. Plaintiff claims the ALJ wrongly discounted Dr. Pickell's assessment and failed to provide

18  sufficient reasons to discount it.

19         A treating physician's opinion is not conclusive as to a claimant's physical condition or the

20  ultimate issue of disability and may be disregarded by the ALJ even when it is not contradicted.

21  *Rodriquez v. Bowen*, 876 F.2d 759, 761-762, n. 7 (9th Cir. 1989); *Magallanes*, 881 F.2d at751; *Matney*

22  *v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).[4]  An ALJ may reject a treating physician's opinion

23  whether or not it is contradicted, if the opinion is "brief and conclusory in form with little in the way of

24  clinical findings to support its conclusion." *Magallanes,* 881 F.2d at 751. Inconsistencies and

25  ambiguities in a treating physician's opinion regarding disability may constitute specific, legitimate

26

27         [4]      A treating physician's opinion is not conclusive as to claimant's disability as this ultimate issue is an
    administrative finding reserved to the Commissioner. 20 C.F.R. § 404.1527(e). The Commissioner has final responsibility
28  to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1546.

1  reasons to reject the opinion. *Matney*, 981 F.2d at 1020.

2      The Ninth Circuit has further explained:

3          To reject the opinion of a treating physician which conflicts with that of an
examining physician, the ALJ must "'make findings setting forth specific, legitimate
4  reasons for doing so that are based on substantial evidence in the record.'" . . . "The ALJ
can meet this burden by setting out a detailed and thorough summary of the facts and
5  conflicting clinical evidence, stating his interpretation thereof, and making findings." .
. . The rule . . . does not apply, however, "when the nontreating physician relies on
6  independent clinical findings that differ from the findings of the treating physician." . .
. "'[T]o the extent that [the nontreating physician's] opinion rests on objective clinical
7  tests, it must be viewed as substantial evidence . . .'"

8  *Magallanes*, 881 F.2d at 751(citations omitted.)

9      An ALJ may reject a treating physician's report based on a claimant's exaggerated claims. *See,*

10  *e.g., Sandgathe*, 108 F.3d at 980.  A physician's opinion of disability "premised to a large extent upon

11  claimant's own accounts of his symptoms and limitations" may be disregarded where those complaints

12  have been "properly discounted." *Fair*, 885 F.2d at 605 (citing *Brawner v. Sec. of Health & Human*

13  *Servs.*, 839 F.2d 432, 433-434 (9th Cir. 1988)); *see Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996),

14  *cert. denied*, 519 U.S. 1113, 117 S.Ct. 953 (1997) ("no physician has been able to find a link between

15  [claimant's] complaints and known medical pathologies").

16      "[T]he ALJ is responsible for determining credibility, resolving conflicts in the medical

17  testimony, and for resolving ambiguities." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

18  Inconsistencies and ambiguities in a treating physician's opinion regarding disability may constitute

19  specific, legitimate reasons to reject the opinion. *Matney*, 981 F.2d at 1020.

20      In summarizing the medical evidence, the ALJ did not fully embrace Dr. Pickell's assessment

21  in part:

22      Giving the claimant the benefit of doubt and considering the totality of the evidence
within the file, I find[] that a slightly more restrictive finding is warranted with regard
23  to the claimant's lifting capacity; therefore, that finding of Dr. Pickell is not adopted
herein.  Furthermore, I find[] that Dr. Pickell's findings with regard to the claimant's
24  capacity for standing, walking, and sitting, and his manipulative limitations, as well as
his environmental limitations which preclude exposure to temperature extremes and
25  vibrations are not supported by any tests or clinical observations in his treatment notes
are contradicted by other credible evidence, and are overly restrictive; therefore, I do not
26  adopt them.  (AR 23.)

27      The ALJ's assessment is consistent with Dr. Pickell's conclusions in part and is bolstered by Dr.

28  Prong who found that plaintiff is able to: (1) lift/carry 10 pounds frequently and 20 pounds occasionally;

1    (2) stand/walk about six hours in an eight-hour workday; (3) sit about six hours in an eight-hour

2    workday; and (4) push/pull subject to the lift/carry limitations.  (AR 154.)  Dr. Pong found neither

3    postural, manipulative, communicative nor environmental limitations. (AR 158.)  Although Dr. Prong

4    is a nontreating, nonexamining physician, his findings "can amount to substantial evidence, so long as

5    other evidence in the record supports those findings." *Saelee*, 94 F.3d at 522.  Dr. Pickell and Dr. Pong

6    generally concluded that plaintiff can perform light work to provide consistent, independent, clinical

7    evidence to support the ALJ's residual functional capacity assessment.  The ALJ provided specific,

8    legitimate reasons to discount Dr. Pickell's assessment in part.  The ALJ's acceptance of Dr. Pickell's

9    assessment in part is not grounds to disregard the ALJ's evaluation of Dr. Pickell's assessment.  "It is

10   not necessary to agree with everything an expert witness says in order to hold that his testimony contains

11   'substantial evidence.'" *Russell*, 856 F.2d at 83.  Plaintiff points to no meaningful miscue in the ALJ's

12   evaluation of Dr. Pickell's assessment.

13          With no meritorious argument, plaintiff criticizes the ALJ's evaluation of Dr. Wood's

14   assessment.  After thoroughly reviewing Dr. Wood's findings, the ALJ explained his rationale to

15   discount Dr. Woods' assessment:

16          While I carefully took Dr. Wood's recommendations into consideration in determining
            the claimant's physical residual functional capacity, I also note that Dr. Wood's very
17          restrictive assessment of the claimant's physical residual functional capacity does not
            match the relatively benign objective findings that he cites within his report.  I also note
18          that Dr. Wood's findings are also overly restrictive, when compared with the rest of the
            evidence within the file.  For both of these reasons, I do not adopt his findings herein.
19          I also note that Dr. Wood indicated in his report that the claimant had reported taking
            Neurontin, Wellbutrin, Dalmane, Remeron, Imitrex, and Prevacid, medications generally
20          prescribed as an anti-convulsant, for depression, insomnia, for migraine headaches, and
            for gastroesophageal reflux disease.  (AR 22.)

21

22   Plaintiff fails to demonstrate insufficiency in the ALJ's review of Dr. Wood's assessment.  The ALJ

23   properly noted the absence of objective clinical findings to support Dr. Wood's restrictive assessment,

24   especially given the other evidence. *See Burkhart v. Bowen*, 856 F.2d 1335, 1339-1340 (9th Cir. 1988)

25   (proper to reject physician opinion unsupported by objective or subjective medical findings).

26          As noted by the Commissioner, Dr. Fields conducted a thorough consultative examination to

27   conclude that plaintiff has unimpaired ability to maintain attention and concentration for simple one-

28   and two-step tasks and grossly unimpaired ability to perform multiple step and high level cognitive tasks.

1   (AR 133.) Dr. Fields' opinion is substantial evidence to support the ALJ's finding that plaintiff is able

2   to "perform at least simple, repetitive tasks" in that when an "opinion of a nontreating source is based

3   on independent clinical findings that differ from those of a treating physician, the opinion of the

4   nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve

5   the conflict." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  In addition, Dr. Morando

6   corroborated Dr. Fields' opinion that plaintiff is able to perform at least simple, repetitive tasks.  (AR

7   133, 152.)

8         The ALJ thoroughly outlined and evaluated the medical record and physician opinions, resolved

9   conflicts, and made specific findings.  Plaintiff fails to demonstrate grounds not to accede to the ALJ's

10  interpretation of the evidence.  "Where evidence exists to support more than one rational interpretation,

11  the Court must defer to the decision of the ALJ." *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir.

12  1992).  This Court finds no error in the ALJ's evaluation of the physician opinions.

13                              **CONCLUSION AND ORDER**

14         For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ

15  properly concluded plaintiff is not disabled.  This Court further finds the ALJ's decision is supported

16  by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this

17  Court DENIES plaintiff's request to reverse the Commissioner's decision to deny plaintiff SSI or to

18  remand for further proceedings.  This Court DIRECTS the Court's clerk to enter judgment in favor of

19  defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against plaintiff Teresa Van Lier

20  and to close this action.

21         IT IS SO ORDERED.

22  **Dated:    September 14, 2005               /s/ Lawrence J. O'Neill**
23  66h44d                                UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28

                                        23